1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CLARENCE SARGENT,

11             Plaintiff,                    No. CIV S-09-1472 GGH P

12        vs.

13   P. STATTI, et al.,

14             Defendants.               ORDER

15   _____/

16             By <u>Order</u>, filed on August 17, 2009 (docket # 28), plaintiff was directed to show

17   cause why his August 6, 2009 (dkt # 21), ex parte request for immediate injunctive relief alleging

18   an imminent threat of an attack by his cellmate, construed as a motion for a Temporary

19   Restraining Order (TRO), had not been rendered moot upon his having been subsequently moved

20   and placed in a single cell in a different building.[1]  In the <u>Order</u> at dkt # 28, the court noted that in

21   an <u>Order</u>, filed on August 7, 2009 (dkt # 23), the Attorney General and pertinent defendants had

22   been directed to take any necessary steps to determine whether plaintiff was in imminent danger

23   in his current housing arrangement and set an August 14, 2009, deadline for a response to

24   _____

25        [1] Plaintiff has consented to the jurisdiction of the undersigned (dkt # 6) and defendants
     have not yet been served and have not yet appeared in this action.

26

                                        1

1 plaintiff's motion.  The Office of the Attorney General filed a timely opposition, on August 12,

2 2009.  Dkt # 26.

3                     In the show cause order, the undersigned also stated:

> In his request for a TRO, plaintiff averred that he was in fear of an
> imminent attack by his cellmate, Mike Nichols, because Nichols
> was "known for beating up sex offenders," and although plaintiff is
> "not a sex offender," his prison file indicates otherwise.  Dkt # 21,
> pp. 1-2.  Inexplicably, Nichols was supposedly provided plaintiff's
> "papers" by unnamed prison officials, and although Nichols
> evidently "didn't glance at them," plaintiff apparently felt
> compelled to attempt to offer an explanation to Nichols, which left
> plaintiff under a threat of harm.  Id.  In the response from the
> Attorney General's Office, it is noted, inter alia, that plaintiff has
> been moved, as of August 10, 2009, out of the cell, and into a single
> cell in a different building, and is awaiting a future determination of
> appropriate housing by the Institutional Classification Committee.
> See Opp., p. 2 & Declaration of Correctional Sergeant Amero (dkt #
> 26).  Plaintiff must now show cause, by August 28, 2009, why his
> request for a TRO, alleging that he is "under an immediate threat of
> being physically harmed" from his cellmate (dkt # 21, p. 2), has not
> now been rendered moot.

14 Dkt # 28, p.2.

15                     In his response, timely filed on August 24, 2009 (dkt # 30), plaintiff seeks to

16 explain the deficiencies of the TRO request that the court had originally noted.  See Order, filed

17 on August 7, 2009 (dkt # 23).   However, what is germane at this point is not each circumstance

18 under which plaintiff filed his request for immediate injunctive relief, but rather whether plaintiff,

19 in his current placement, is subject to the imminent threat of attack by a particular inmate, Mike

20 Nichols, then his cellmate, that he perceived and that was the subject of his TRO motion.

21 Plaintiff concedes that he has been placed in a single cell and on single cell status as a result of the

22 court's attention to his request, but maintains that if the court should deny his request for

23 immediate injunctive relief, the "wolves" will re-circle and the "'system' will have me

24 terminated.'"  Reply (dkt # 30), p. 4.   Thus, while acknowledging, at least implicitly, that he is no

25 longer subject to a threat of harm from his former cellmate Nichols, the subject of his TRO

26 request, he expresses anxiety over what he apparently believes is an on-going "set up" by prison

1   officials, who will immediately proceed to subject plaintiff to violent attack or worse in a pattern

2   that he thinks replicates the one wherein plaintiff testified against prison guards at Pelican Bay

3   State Prison (PBSP).  Id., at 3.  This pattern evidently involved Pelican Bay prison guards doing

4   inmates favors in return for which the inmates were provided the paperwork of sex offenders so

5   that the sex offenders could be assaulted.  Id. The court has previously noted that plaintiff has

6   alleged his status as a "special interest" inmate who has been in both federal and state custody due

7   to safety concerns arising from plaintiff's assistance in the prosecution of PBSP prison staff.  Dkt

8   # 23, p. 1.

9          TRO

10         The purpose in issuing a temporary restraining order is to preserve the status quo

11   pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a

12   temporary restraining order due to the fact that very few such orders can be appealed prior to the

13   hearing on a preliminary injunction.  It is apparent, however, that requests for temporary

14   restraining orders which are not ex parte and without notice are governed by the same general

15   standards that govern the issuance of a preliminary injunction.[2]  See New Motor Vehicle Bd. v.

16   Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch.

17   Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting);

18   Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the

19   emphasis of the court is directed to irreparable harm and the balance of hardships because the

20   merits of a controversy are often difficult to ascertain and adjudicate on short notice.

21   \\\\\

22

23         [2] To the extent that this purports to be an ex parte motion for a TRO without notice, the
     undersigned notes that there are stringent requirements to be imposed under Fed. R. Civ. P. 65
24   for issuance of such an order, which plaintiff clearly has not met.  Reno Air Racing Ass'n., Inc.
     v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  Rule 65(b) permits issuance of a TRO without
25   "notice to the adverse party or its attorney, only if: (A) specific facts in an affidavit or a verified
     complaint clearly show that immediate and irreparable injury...will result to the movant before
26   the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing
     any efforts made to give notice and the reasons why it should not be required."

1  Preliminary Injunction Standard

2          "The proper legal standard for preliminary injunctive relief requires a party to

3  demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

4  in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

5  injunction is in the public interest.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 977-978 (9th Cir.

6  2009), quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 375-76

7  (2008).

8          In cases brought by prisoners involving conditions of confinement, any preliminary

9  injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

10  court finds requires preliminary relief, and be the least intrusive means necessary to correct the

11  harm." 18 U.S.C. § 3626(a)(2).

12          As to determining whether plaintiff is subject to irreparable harm, plaintiff's

13  allegations simply lack coherence or anything like adequate support.  Plaintiff asks that unnamed

14  defendants be temporarily be restrained from taking his life or forcing him to take his own life.

15          In this case, plaintiff does not make a showing that plaintiff will be subjected to the

16  specific circumstances which gave rise to plaintiff's TRO request.  Speculative injury does not

17  constitute irreparable harm.  Goldies' Bookstore, Inc. v. Superior Court of the State of California,

18  739 F.2d 466, 472 (9th Cir. 1984).  A presently existing actual threat must be shown, although the

19  injury need not be certain to occur.  See 11 C. Wright & A. Miller, Federal Practice and

20  Procedure, § 2848 (1973).  Plaintiff's request for a TRO to prevent him from being assaulted by

21  an inmate with whom he is no longer housed is denied as moot.  Further, plaintiff's earlier motion

22  for a single cell chrono, filed on June 10, 2009 (dkt # 8), which is apparently a letter directed to

23  the defendant warden of High Desert State Prison, recounting plaintiff's alleged

24  dreams/nightmares/night tremors about having any cellmate, will also be denied.

25  \\\\\

26  \\\\\

4

1  Miscellaneous

2           Third Party Motion to Join

3           An inmate named Juan Banda has submitted a putative motion to join this case as a

4  plaintiff, pursuant to Fed. R. Civ. P. 20(a), or alternatively, to be noticed as a member of a class

5  should this matter proceed as a class action, citing Fed. R. Civ. P. 23(b)(3) & (c)(B).  The basis

6  for the defective motion appears to be Inmate Banda's allegation that he has been subject to High

7  Desert State Prison's "unwritten policy to deny, destroy, or otherwise prevent inmate grievances."

8  Motion to join, p. 2.   While plaintiff, within the allegations of his first amended complaint, does

9  complain that some of his grievances at HDSP have not been appropriately processed or

10 addressed,[3] there has been no appropriate motion, made pursuant to Fed. R. Civ. P. 23, to certify

11 this case as a class action, nor has this inmate demonstrated that he should be permitted to join

12 this action under Rule 20, not having demonstrated that his allegations regarding inadequacies of

13 HDSP's grievance system constitute what is the gravamen of the instant plaintiff's allegations,

14 thus failing to demonstrate that his allegation arises "out of the same transaction, occurrence, or

15 series of transactions or occurrences...."  Fed. R. Civ. P. 20(a).

16           Inmate Banda must proceed in a separate and individual action upon any complaint

17 he may have regarding any constitutional deprivation he believes he has suffered.  In doing so,

18 this individual would do well to take into consideration that prisoners do not have a "separate

19 constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d

20 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the

21 non-existence of, or the failure of prison officials to properly implement, an administrative

22 appeals process within the prison system does not raise constitutional concerns.  Mann v. Adams,

23 855 F.2d at 640.  See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba,

24 932 F.2d 728 (8th Cir. 1991).  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A

25

26           [3] See, e.g., first amended complaint, filed June 10, 2009 (dkt # 9), pp. 7-9.

1  prison] grievance procedure is a procedural right only, it does not confer any substantive right

2  upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the

3  procedural protections envisioned by the fourteenth amendment").  Specifically, a failure to

4  process a grievance does not state a constitutional violation.  Buckley, supra.  State regulations

5  give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if

6  those regulations pertain to "freedom from restraint" that "imposes atypical and significant

7  hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515

8  U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[4]

9              Request for Injunction re: Access to Courts

10             Plaintiff complains that after months of seeking access to the administrative

11 segregation law library, on July 28, 2009, he was taken to the satellite facilities for an hour and

12 received a few sheets of paper and envelopes.  Dkt # 16, p. 1.  Plaintiff's avers that his request for

13 specific case law was refused; when he was finally supplied with a copy of the Federal Rules of

14 Civil Procedure, "a significant amount of pages" was missing; when Correctional Officer Haas

15 gave plaintiff a second copy, it had even more pages missing.  Id., at p. 2.  Plaintiff also asserts

16 that forms and photocopies are often not available "due to the copier being in a constant state of

17 disrepair" and contends that ad seg law library facilities have been sub-standard for years,

18 submitting his assertions as a declaration under penalty of perjury.   Id. at 1-4.

19             Plaintiff's request centers on the claimed deficiencies of a satellite prison law

20 library, which he is apparently confined to using during his ad seg housing.  It is not clear that

21

22           [4]  "[W]e recognize that States may under certain circumstances create liberty interests
   which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.
23 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to
   freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
24 to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
   445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494
25 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic
   drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the
26 ordinary incidents of prison life." Sandin v. Conner, supra.

1 plaintiff, in his current housing, is limited to that same satellite library, in which case the request

2 may have been rendered moot.  In the event that it is not moot, it is nevertheless unclear how the

3 deficiencies plaintiff claims have deprived him of his right of access to the courts.  Prisoners do

4 not have:

5                     an abstract, freestanding right to a law library or legal assistance, an
inmate cannot establish relevant actual injury simply by establishing

6                     that his prison's law library or legal assistance program is subpar in
some theoretical sense.

7

8 Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996), citing Bounds v. Smith, 430

9 U.S. 817, 97 S. Ct. 1491 (1977).   Rather, plaintiff must set forth an "actual injury" to support a

10 claim for denial of access to the courts under the First Amendment.  Lewis v. Casey, supra, at

11 351-53, 355, 116 S. Ct. 2174.  The court held that before a denial of access to the courts claim can

12 go forward, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or

13 was being impeded."  Id.  Accordingly, before a claim of denial of access to the courts can

14 proceed, an inmate must demonstrate that he was precluded or thwarted in his efforts to present a

15 legally or factually arguable claim to the courts.  Plaintiff has failed to do so in his motion and it

16 will be denied.

17                Request for Production of Documents

18         Plaintiff has filed a document entitled "request for production of documents."

19 Plaintiff is informed that court permission is not necessary for discovery requests and that neither

20 discovery requests served on an opposing party nor that party's responses should be filed until

21 such time as a party becomes dissatisfied with a response and seeks relief from the court pursuant

22 to the Federal Rules of Civil Procedure.  Discovery requests between the parties shall not be filed

23 with the court unless, and until, they are at issue.

24         Accordingly, IT IS ORDERED that:

25         1.  Plaintiff's motion for immediate injunctive relief, construed as a motion for a

26 TRO, filed on August 6, 2008 (dkt # 21), is denied as moot;

2.  Plaintiff's motion/request for a single cell chrono, filed on June 10, 2009 (dkt # 8), which also appears moot at this time, is denied as well.

3.  Plaintiff's inadequately supported motion regarding availability of satellite law library material, filed on July 31, 2009 (dkt # 16), is denied; and

4.  Plaintiff's July 17, 2009 (dkt # 13), request for production of documents (Docket No. 13) will be placed in the court file and disregarded.  Plaintiff is cautioned that further filing of discovery requests or responses, except as required by rule of court, may result in an order of sanctions, including, but not limited to, a recommendation that this action be dismissed.

DATED: September 17, 2009                      /s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
sarg1472.dny

8